**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Todd A. Helwig,                                             Case No. 3:14CV1503

      Plaintiff

      v.                                                            **ORDER**

Carolyn W. Colvin,
  Acting Commissioner of Social Security,

      Defendant

This is a Social Security case in which the plaintiff, Todd Helwig, appeals from the Commissioner's decision granting in part and denying in part his application for benefits.

An administrative law judge (ALJ) ruled Helwig became disabled on July 3, 2012, by virtue of his chronic obstructive pulmonary disease, asthma, degenerative joint disease of the knees, and allergic rhinitis. But the ALJ rejected Helwig's claim he had been disabled since his alleged onset date in August, 2010.

Pending is Magistrate Judge Vecchiarelli's Report and Recommendation (R&R), which recommends affirming the ALJ's decision. (Doc. 20). Helwig has filed an objection. (Doc. 21).

For the following reasons, I overrule the objection, adopt the R&R as the order of this court, and affirm the Commissioner's decision.

**Discussion**

In Social Security cases, the Commissioner determines whether a claimant is disabled and entitled to benefits. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). My review

"is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id.*

Because the Magistrate Judge's R&R sets forth the relevant facts and procedural background, I will presume the reader's familiarity with it and proceed directly to Helwig's objections, providing additional facts where necessary.

### A. Listing 3.03(B)

Under the Commissioner's regulations, an ALJ will presume a claimant disabled if the claimant meets or medically equals a listed impairment. *Lenarz v. Comm'r of Soc. Sec.*, 2013 WL 5234121, *2 (N.D. Ohio) (Gwin, J.).

Listing 3.03(B) defines when an ALJ may presume a claimant disabled on account of asthma.

"To qualify for disability based on asthma attacks, [Listing] 3.03B requires attacks as defined in section 3.00 C, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or six times in one year." *Brooks v. Comm'r of Soc. Sec.*, 2009 WL 891761, *8 (S.D. Ohio); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03(B).

Section 3.00 C defines asthma "attacks" as "prolonged systematic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(C).

When calculating the number of attacks a claimant has experienced, "[e]ach in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03(B).

The ALJ ruled Helwig did not meet or medically equal Listing 3.03(B). Although the ALJ recognized Helwig "frequent[ly] present[ed] . . . for respiratory problems," he concluded "the medical records do not document that these episodes specifically lasted one or more days and required intensive treatment[.]" (Doc. 15 at 22).

The Magistrate Judge, after examining the medical records corresponding to Helwig's trips to the emergency room for an exacerbation of his chronic obstructive pulmonary disorder, concluded the ALJ applied the Listing properly. Based on her review of those records, the Magistrate Judge found Helwig's treatment "involved mainly the administration of aerosol treatments and other medications that were not given intravenously." (Doc. 20 at 18).

Helwig objects to that ruling, contending the medical records show he had more than a dozen qualifying asthma "attacks" from December, 2010, to June, 2012.

There is no dispute Helwig had at least three qualifying asthma "attacks" between mid-December, 2010, and October, 2011.

In mid-December, 2010, Helwig reported to the ER in respiratory distress, where hospital personnel placed him on a ventilator and kept him intubated for three days. This episode qualifies as two "attacks."

Then, on July 26, 2011, he reported to the ER again with shortness of breath and a cough. Hospital staff treated him with two kinds of intravenous medications: Solu-Medrol and Zithromax. This counts as one "attack." *Maltsberger v. Astrue*, 2011 WL 2200024, \*4 (D. Ariz.) (claimant's hospital stay and intravenous treatment with Solu-Medrol, a bronchodilator, qualified as "attack").

The question, then, is whether any three of Helwig's eleven others trips to ER Helwig qualify as asthma "attacks."

3

I can assume, *arguendo*, Helwig's hospitalization on December 31, 2011, qualifies as two "attacks." Treatment records show Helwig received intravenous medication in the ambulance en route to the hospital, and also that Helwig remained hospitalized for at least twenty-four hours. This brings Helwig's tally to five qualifying attacks.

Nevertheless, I conclude there is substantial evidence to support the ALJ's determination none of the remaining hospital visits qualifies as an "attack":

- Although Helwig stayed at the hospital for more than twenty-four hours between February 9 and 10, 2011, and received antibiotics, there is no evidence he received the antibiotics intravenously, as the regulations require. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00 C (defining "intensive treatment" as "*intravenous* bronchodilator or antibiotic administration") (emphasis added).

- Helwig stayed at the hospital for two days in mid-March, 2011, and received Albuterol, a bronchodilator. But there is no evidence he received that medication intravenously or as part of "prolonged inhalational bronchodilator therapy." *See id.*

- No medical evidence shows that, during his remaining visits to the ER, Helwig received the kind of intensive treatment required by Listing 3.00 C.

In sum, there is no doubt Helwig made frequent trips to the ER to seek treatment for his chronic obstructive pulmonary disorder between December, 2010, and October, 2011. But the ALJ and the Magistrate Judge correctly determined that, during most of the trips to the ER, Helwig did not receive the kind of intensive treatment that would qualify those incidents as asthma "attacks."

I therefore overrule Helwig's first objection.

### B. Treating-Physician Rule

Helwig's treating allergist, Dr. Lois Nelson, prepared a Physical Capacities Evaluation form in September, 2012. (Doc. 15 at 683). She opined Helwig "would likely miss 3 or more days of work per month due to exacerbations" of his chronic obstructive pulmonary disorder. (*Id.*).

The ALJ, in determining Helwig was capable of performing a limited range of sedentary work, gave "great weight" to Dr. Nelson's opinion. (*Id.* at 27). Nevertheless, the ALJ did not specifically adopt Dr. Nelson's, finding regarding the number of days of work Helwig was likely to miss each month.

Helwig contends the ALJ failed to give good reasons for discarding that component of Nelson's opinion.

The Magistrate Judge rejected Helwig's argument after finding: 1) any error would have been harmless, given that Nelson did not render an opinion until September, 2012 – more than two months after the date on which the ALJ determined Helwig became disabled – and nothing in her opinion indicated Helwig became disabled before July, 2012; 2) in any event, the ALJ was not required to accept all components of Dr. Nelson's opinion; and 3) there was substantial evidence in the record that Helwig was capable of performing limited sedentary work without a limitation for excessive absenteeism.

I need not address the issue of harmless error, as the second and third bases of the Magistrate Judge's opinion are entirely correct.

As Magistrate Judge Vecchiarelli noted, an ALJ may give a treating-source opinion "great weight" without obliging himself to accept everything the source has said. 20 C.F.R. § 404.1527(c)(2). Rather, he may disregard those portions of the opinion that are inconsistent with other substantial evidence in the case. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

That rule has force here, given the substantial evidence in the record supporting the ALJ's decision not to adopt a limitation for excessive absenteeism.

5

Most importantly, another treating source – Dr. Jamie Ruiz, Helwig's pulmonologist – opined Helwig was unlikely to miss three or more days of work per week. (Doc. 15 at 609). Likewise, the agency reviewing physicians determined Helwig could perform light work without a limitation for excessive absenteeism. (*Id.* at 84-85, 109-10). Finally, the treatment records from Helwig's visits to the ER reflect his doctors' opinions that, with proper medication, Helwig would be able to return to work. (*Id.* at 294, 346, 475, 615).

The ALJ discussed all of this evidence in his written decision, and that discussion provides the requisite "good reasons" for discounting Dr. Nelson's opinion re. excessive absenteeism.

Helwig's second objection is therefore meritless.

### C. Helwig's Credibility

In determining Helwig's residual functional capacity (RFC), the ALJ found Helwig's statements about "the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." (Doc. 15 at 24).

Helwig objects this "blanket assertion" was an insufficient basis for drawing an adverse inference about his credibility.

I agree with the Magistrate Judge, however, that the ALJ's opinion provides a sufficient explanation for why the ALJ found Helwig's statements somewhat incredible.

As the Magistrate Judge observed, the ALJ, in making his credibility determination, considered: 1) Helwig's daily activities; 2) the treatments Helwig underwent, and his responses thereto; 3) findings made during various clinical examinations; and 4) the opinions of treating sources and agency reviewing physicians. Then the ALJ "specifically compared Plaintiff's alleged

6

physical symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective evidence." (Doc. 20 at 25).

This is exactly the process in which an ALJ must engage when evaluating a claimant's credibility. 20 C.F.R. § 404.1529(c); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Accordingly, the ALJ articulated sufficient grounds on which to discredit some of Helwig's testimony.

Finally, there is no merit to Helwig's objection the ALJ's evaluation of his credibility was inconsistent.

Helwig notes that, after the ALJ found his testimony regarding the intensity, persistence, and limiting effects of his symptoms "not entirely credible," the ALJ concluded Helwig's testimony respecting his "alleged symptoms and restrictions are generally credible and supported by the evidence of record and numerous hospital presentations." (Doc. 15 at 22).

There is no inconsistency, however, in the ALJ's conclusion, on the one hand, Helwig's testimony about his symptoms and the ensuing restrictions was generally credible, and, on the other, a slice of that testimony was "not entirely incredible." Indeed, an ALJ may credit some parts of a claimant's testimony and reject others, to the extent the record as a whole supported or undermined that testimony.

I therefore overrule Helwig's third objection.

**D. Number of Available Jobs**

Vocational Expert Mark Pinty testified at Helwig's hearing.

The ALJ asked Pinty to consider a person: 1) capable of performing sedentary work; 2) who must avoid exposure to extreme heat and humidity; and 3) who must also avoid all exposure to fumes, dust, odors, gases, pollutants, and poor ventilation. (Doc. 15 at 62).

Pinty testified this hypothetical individual could work as an assembler, an inspector, and a surveillance-system monitor. (*Id.* at 64-65). In total, there were 350 of these jobs available regionally, and 315,000 available nationally. (*Id.*).

Helwig's attorney then asked Pinty whether an individual who "must avoid even minimal exposure to dust, fumes, gasses, pollutants, etcetera, and needs what, in lay terms, would be described as a normally clean office environment" could perform any of three jobs Pinty had just identified. (*Id.* at 66).

Pinty responded the individual could not work as an inspector or monitor, because the working environment for those jobs might be "not clean." (*Id.*).

At his Step Five analysis, the ALJ determined Helwig was capable of performing (at least before July 3, 2012) the assembler, inspector, and monitor positions. (*Id.* at 24).

Before the Magistrate Judge, Helwig contended the ALJ should have ruled he was incapable of performing the inspector and monitor positions, given Pinty's answer to the question Helwig's counsel posed. The Magistrate Judge rejected that argument, citing the fact the ALJ never adopted a limitation for work in "a normally clean office environment."

Helwig now objects to that ruling because both hypothetical questions were "essentially identical." (Doc. 21 at 11-12).

I disagree.

The question Helwig's lawyer asked added a limitation the ALJ had not mentioned or adopted, and one which appears to have no basis in the record: that Helwig could work only in "a normally clean office environment."

Although Helwig insists there is no appreciable difference between the two hypothetical questions asked of Pinty, Pinty's testimony suggests otherwise. After all, Pinty's answers to the two questions were different, resulting in the loss of 300 regional jobs and 290,000 national jobs that Helwig was capable of performing.

Because the limitation Helwig's counsel inserted into the hypothetical had no basis in the record, and was materially different than the ALJ's hypothetical, the ALJ did not err in finding there were a substantial number of jobs Helwig was capable of performing.

## Conclusion

It is, therefore

ORDERED THAT:

1. Helwig's objections (Doc. 21) be, and the same hereby are, overruled;

2. The Magistrate Judge's R&R be, and the same hereby is, adopted as the order of this court; and

3. The Commissioner's decision be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge